**Frank COGHLAN III, Joanna L. Coghlan, Individually and on Behalf of All Other Similarly Situated Persons**

v.

**AQUASPORT MARINE CORP., Wellcraft Marine Corp., Genmar Industries, Inc., and Genmar Holdings, Inc.**

No. Civ.A. G–99–355.

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 8, 1999.

Edward F. Fernandes, Solar & Fernandes, Houston, TX, for plaintiffs.

David J. Beck, Beck Redden and Secrest, Houston, TX, Arthur M. Glover, Jr., Glover Anderson, Houston, TX, for defendants.

## ORDER DISMISSING PLAINTIFFS' CLAIMS WITHOUT PREJUDICE

KENT, District Judge.

Plaintiffs, dissatisfied boat owners, brought suit against Defendants, alleging a violation of the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301–2312 ("MMWA"). The MMWA violation was predicated on an alleged breach of the implied warranty of fitness for a particular purpose. Plaintiffs also brought state law claims of fraud, negligent misrepresentation, unjust enrichment and civil conspiracy. Now before the Court is Defendants' Motion to Dismiss, seeking to dismiss the MMWA claims and the civil conspiracy claims pursuant to Fed.R.Civ.P. 12(b)(6).

However, based on considerations not raised in Defendants' Motion, the Court is convinced that Plaintiffs fail to state any claim upon which relief can be granted. As will be explained more fully herein, the essential defect in the pleadings is that Plaintiffs have failed to allege any legally cognizable damages. Since damages are an essential element of all five of Plaintiffs' causes of action, the Court *sua sponte* **ORDERS** that all of Plaintiffs' claims be **DISMISSED WITHOUT PREJUDICE.**

### I. Factual Summary

In May of 1998, Plaintiffs purchased an Aquasport 205, a fishing boat with a retail price of approximately $28,000. Plaintiffs allege that starting in 1996, Defendants changed their advertising strategy to emphasize the fiberglass construction of their fishing boats. According to Plaintiffs, the marketing logic behind this shift in emphasis is that a fiberglass construction is "a characteristic desirable to fishermen because, among other things, the boats would not rot and would retain their value."

Plaintiffs allege, and Defendants concede, that the Aquasport 1998 brochure contains the following excerpts:

Since 1964, Aquasport has given fishermen more for their dollar than any other brand. More innovation. More fea-

tures. More performance. More value. More of everything you look for in a fishing boat. You can pay a lot more for a boat, but why? Aquasport's got it all. More innovation.... And, believe it or not, the first to introduce an all fiberglass fishing boat. That's right, the first to get the wood off and out.

Defendants also acknowledge that the brochure contains the statement that the 1998 Aquasport line, with one exception, has a "self-draining, non-skid fiberglass deck."

Plaintiffs subsequently discovered that the deck of their Aquasport 205 is composed of one and a half inches of plywood encased within fiberglass. Disappointed that they were not the owners of a truly "all fiberglass fishing boat", Plaintiffs instituted the present action.

## II. Analysis

When considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint, and views them in a light most favorable to the plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993). Unlike a motion for summary judgment, a motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (reiterating the *Conley* test); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994).

It is well settled that this Court can consider the sufficiency of a plaintiff's complaint *sua sponte. See First Gibraltar Bank v. Smith,* 62 F.3d 133, 135 (5th Cir. 1995); *Guthrie v. Tifco Indus.,* 941 F.2d 374, 379 (5th Cir.1991) ("Although [Defendant] did not file a motion to dismiss pursuant to Rule 12(b)(6), the district court was authorized to consider the sufficiency of the complaint on its own initiative."); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 at 301 (2d ed.1990).

## A. Absence of Palpable Injuries

■ Legally cognizable damages are an essential element for all five of Plaintiffs' causes of action. The Magnuson–Moss Warranty Act protects "a consumer who is *damaged*" by the failure of a defendant to comply with, inter alia, any implied warranties. 15 U.S.C. § 2310(d)(1) (emphasis added). Suing under the MMWA does not change the rudimentary fact that "liability does not exist in a vacuum; there must be a showing of some damage, which may lead to further issues of quantum." *Feinstein v. Firestone Tire & Rubber Co.,* 535 F.Supp. 595, 602 (S.D.N.Y.1982) (dismissing a claim under the MMWA predicated on an alleged breach of the implied warranty of merchantability, where plaintiff failed to plead legally cognizable damages).

■ An essential element of negligent misrepresentation is that "the plaintiff suffers pecuniary *loss* by justifiably relying on the representation." *Federal Land Bank Ass'n of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991) (emphasis added). Common law fraud requires "a material misrepresentation ... which caused *injury.*" *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990) (emphasis added). An indispensable element of civil conspiracy is *"damages* as the proximate result" of the illicit agreement. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 933 (Tex. 1983) (emphasis added). Finally, "an action for unjust enrichment will lie where one person has obtained money from another person by fraud, duress, or taking undue advantage." *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.,* 736 S.W.2d 247, 250 (Tex.App.—Corpus Christi 1987, writ denied). Since the defendant in an unjust enrichment action is enriched at the expense of the plaintiff, the plaintiff necessarily suffers injury.

Clearly Plaintiffs are required to allege damages for each of their claims. This is not a daunting challenge in the typical case, especially since Fed.R.Civ.P. 8(a)(2) merely requires a plaintiff to submit "a short and plain statement of the claim

showing that the pleader is entitled to relief." Nevertheless, a plaintiff's burden of alleging damages is not discharged by simply postulating some purely hypothetical or inchoate injury which may or may not manifest itself in the future. A federal court is not the proper forum in which to air metaphysical speculations about theoretical injuries. On the contrary, for a plaintiff's damages to be legally cognizable the plaintiff must have already suffered some sort of concrete, actual, palpable injury.[1] "The threat of future harm, not yet realized, is not enough." Prosser and Keeton on Torts, § 30 at 165 (5th ed.1984).

This Court has applied the "palpable injury rule" before. See Martin v. Ford Motor Co., 914 F.Supp. 1449, 1455 (S.D.Tex.1996). In Martin, plaintiffs complained of the alleged inadequacy of the warning affixed to the visor of Ford automobiles which advised passengers to fasten their safety belts. Consequently, the plaintiffs brought claims asserting breach of contract, breach of express and implied warranties, fraud, negligent misrepresentation, and violation of the Deceptive Trade Practices–Consumer Protection Act, Tex.Bus. & Com.Code §§ 17.41–.63 (Vernon 1987). See Martin, 914 F.Supp. at 1452. But since plaintiffs failed to show they had suffered personal injuries, consequential damages, economic loss, or any other sort of palpable injury, this Court granted defendants' motion for summary judgement on all of plaintiffs' claims. See id. at 1455.

This Court is hardly alone in requiring plaintiffs to allege palpable and concrete damages. "[T]he law grants no cause of action for inchoate wrongs. However egregious the legal fault, there is no cause of action for negligence or products liability until there is actual loss or damage resulting to the interests of another." Gideon v. Johns–Manville Sales Corp., 761 F.2d 1129, 1136 (5th Cir.1985) (emphasis added) (quoting Prosser & Keeton on Torts, supra, § 30 at 165).

In a recent case decided under Texas law, plaintiffs complained that the airbags installed on their cars were capable of deploying so rapidly and forcefully that front seat occupants could be injured or killed. See In re Air Bag Products Liab. Litig., 7 F.Supp.2d 792, 795 (E.D.La.1998). The plaintiffs brought claims founded on negligence, strict liability, breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose. See id. at 796. No allegations of personal injuries or consequential damages were made; instead plaintiffs hypothesized that they had suffered economic damage from the mere fact that the airbags had the propensity to deploy too violently. See id. Plaintiffs sought various forms of relief, including compensation for the supposed diminution of resale value and compensation for the difference between the actual retail price paid and the fair market value of a vehicle marred by the presence of an overly aggressive airbag. See id. Noting that "the absence of manifest injury is so fundamental a deficiency in tort or implied warranty claims that such claims are more appropriately dismissed than preserved" the district court dismissed the claims, concluding that "plaintiff's failure to demonstrate, or even allege, manifest injury or defect shatters an essential element of all their tort and implied warranty claims." Id. at 804, 806.

Other jurisdictions concur. See Briehl v. General Motors Corp., 172 F.3d 623, 628 (8th Cir.1999) (upholding district court's dismissal of plaintiff's claims of fraudulent misrepresentation, fraudulent concealment, breach of express and implied warranties, and breach of contract where plaintiffs did not suffer "actual injury or property damage" but instead merely al-

---

1. The future consequences of an actual injury sustained in the past are indisputably compensable, even though they cannot be predicted with certainty. The Court is here concerned only with the situation in which a plaintiff has yet to suffer any actual injury other than a hypothetical one which may or may not manifest itself in the future.

leged they "suffered economic harm in the form of lost resale value."); *Ford Motor Co. v. Rice*, 726 So.2d 626, 627 (Ala.1998) (denying fraudulent suppression claim under Alabama law where plaintiff's alleged injuries were grounded not on actual personal injuries or property damage, but on the theory that their vehicles "were worth less than they would have been worth had they been what Ford represented them to be."); *In re General Motors Anti–lock Brake Prod. Liab. Litig.*, 966 F.Supp. 1525, 1530 (E.D.La.1997) ("[D]ismissal of plaintiffs' Complaint in its entirety is warranted for failure to adequately plead damages", because defect had not manifested itself in vehicle, and no allegations of personal injury or property damage were made); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y.1997) ("Plaintiff's allegation of possible economic loss fails to plead adequately the required damages element for fraud, negligent misrepresentation, and breach of warranty."); *American Suzuki Motor Co. v. Superior Court*, 37 Cal.App.4th 1291, 44 Cal.Rptr.2d 526, 531 (1995) (dismissing breach of implied warranty claims where plaintiff merely complained of the vehicle's increased roll-over propensity and failed to allege actual personal injury, property damage, or consequential damages); *Barbarin v. General Motors Corp.*, No. Civ. 84–0888, 1993 WL 765821, at *2 (D.D.C. Sept. 22, 1993) (dismissing claims under the Magnuson–Moss Warranty Act and for fraud based on propensity of car to experience "premature wheel lockup", where plaintiffs pleaded potential economic loss, but no actual personal injury or property damage); *Yost v. General Motors Corp.*, 651 F.Supp. 656, 657–58 (D.N.J.1986) (dismissing fraud and breach of warranty claims for failure to adequately plead palpable damages); *Feinstein*, 535 F.Supp. at 602 (dismissing plaintiff's claims under the Magnuson–Moss Warranty Act where plaintiffs failed to allege any actual physical injury or property damage).

■ A careful examination of Plaintiffs' Complaint convinces the Court that Plaintiffs have failed to allege the sort of concrete and palpable injuries required to state a claim for relief. As best the Court can determine, Plaintiffs are alleging that the fiberglass coated deck of their boat has, in theory, a heightened propensity to deteriorate.[2] In other words, Plaintiffs complain they have been injured by the unexpected presence of a small amount of fiberglass coated wood because it is *possible* the coated wood might rot, which *might* necessitate expensive repairs in the future. Plaintiffs also seem to complain that it is *possible* the resale value of their boat will be diminished due to the presence of the fiberglass coated wood.

Yet even on a sympathetic reading, the deficiencies of the Complaint are glaringly obvious. Plaintiffs allege no personal injuries of any kind, not even so much as a splinter in their toes from the unwanted wood. The current structural integrity of their boat is not impugned; its handling and maneuverability are not maligned. The wood is not said to have actually rotted, nor is it said that Plaintiffs have actually paid for any repairs whatsoever. Plaintiffs do not claim they have, in fact, attempted to resell their boat, nor do they allege that their Aquasport 205 has a current resale price disproportionally lower than comparable fishing boats. In short, even when read in the charitable fashion *Conley* requires, the damages alleged in Plaintiffs' Complaint are purely hypothetical.[3] In light of the copious precedent requiring damages to be actual and palpable in order to be legally cognizable, the

---

2. It may be that a fiberglass encased wooden deck is impervious to deterioration. Pursuant to the *Conley* standard of generosity, in assessing the sufficiency of Plaintiffs' Complaint, the Court ignores this possibility and assumes that the wood has at least the potential to rot despite being coated with fiberglass.

3. Of course, in the event this theoretical defect actually manifests itself in the future, Plaintiffs can satisfy the pleading requirements by alleging actual deterioration, by complaining of actual repair bills, and so forth.

Court finds that Plaintiffs' Complaint fails, as a matter of law, to state a claim upon which relief can be granted.

### B. Implied Warranty of Fitness for a Particular Purpose

The Court has identified an additional reason for dismissing Plaintiffs' claim under the Magnuson–Moss Warranty Act. The MMWA violation is predicated on an alleged breach of the implied warranty of fitness for a particular purpose. *See* 15 U.S.C. § 2310(d)(1) (creating a cause of action for consumers damaged by a breach of an implied warranty). The term "implied warranty" is defined by the MMWA as "an implied warranty arising under State law." 15 U.S.C. § 2301(7).

Under Texas law, an implied warranty of fitness for a particular purpose arises when 1) the seller has reason to know of a particular purpose for which the goods are required, and 2) the buyer is relying on the seller's skill or judgement to select goods suitable for that particular purpose. *See* Tex.Bus. & Com.Code Ann. § 2.315 (Vernon 1994). But under Texas law, an implied warranty of fitness for a particular purpose does not arise unless the particular purpose differs from the usual and ordinary use of the goods. In other words, the particular purpose must be some unusual, out of the ordinary purpose peculiar to the needs of an individual buyer. *See* Tex.Bus. & Com.Code Ann. § 2.315, Comment (2) ("A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer that is peculiar to the nature of his business."); *Sipes v. General Motors Corp.*, 946 S.W.2d 143, 158–59 (Tex.–App. Texarkana 1997, writ denied) (no warranty of fitness for particular purpose where plaintiffs acquired airbags "for the general purpose for which they were designed."); *ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 122 (Tex.App.—El Paso, no writ) (no implied warranty of fitness for a particular purpose because "the record reveals no evidence that Appellant's particular purpose for the vacuum was somehow different than it ordinary use."); *Miles v. Ford Motor Co.*, 922 S.W.2d 572, 586–87 (Tex.App.—Texarkana 1996), *rev'd on other grounds*, 967 S.W.2d 377 (Tex.1998) (rejecting implied warranty in connection with purchase of a truck, because "[e]ven if [plaintiff] had told either Ford or the dealership that he intended to carry passengers in his truck, that is the ordinary purpose of a pickup truck, rather than a particular purpose."); *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 365 (Tex.App.—Corpus Christi 1994, no writ) (no implied warranty where purpose of buying chemically treated sorghum seed was "to raise a commercial cash crop", since that is the ordinary purpose of such seed.). Obviously, a seller may nevertheless be liable if a product proves unsuitable for its ordinary use, but that liability hinges on a different implied warranty, the warranty of merchantability. *See* Tex. Bus. & Com.Code Ann. § 2.314 (Vernon 1994); *see also Crosbyton Seed*, 875 S.W.2d at 365.

Plaintiffs unmistakably attempt to plead a breach of the implied warranty of fitness for a particular purpose. However, Plaintiffs' Complaint itself precludes the existence of this kind of warranty. On the one hand, in alleging the existence of a particular purpose, Plaintiffs say they purchased their boat "for purposes of preventing problems associated with dry rot, preventing the costly repairs associated with removing rotted wood from a boat, and maintaining the value of the boat." But on the other hand, when explaining why Defendants changed their advertising strategy in 1996 to highlight the fiberglass construction of the Aquasport boat line, the Plaintiffs state that this construction is "a characteristic desirable to fishermen because, among other things, the boats would not rot and would retain their value." Thus the Complaint itself reveals that resistance to deterioration is a characteristic *generally desired* by purchasers of fishing boats. Just as a purchaser of a passenger truck generally desires the ability to carry

passengers, and a purchaser of a vacuum cleaner generally desires the ability to vacuum up debris, a purchaser of a fishing boat generally desires that the boat be reasonably durable in a damp marine environment. In the absence of allegations that Plaintiffs intended to use their boat somewhere other than the typical marine environment, their purpose was simply the ordinary use for which fishing boats are put. The fact that Defendants may have known of this intent to use the boat in an ordinary manner does not transform an ordinary purpose into a particular purpose. *See Miles* 922 S.W.2d at 586–87; *Crosbyton Seed,* 875 S.W.2d at 365. Thus as a matter of Texas law Plaintiffs have failed to allege a breach of the implied warranty of fitness for a particular purpose, which was the only stated basis for maintaining a claim under the Magnuson–Moss Warranty Act.

For the reasons set out above, all five of Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE,** pursuant to Fed. R.Civ.P. 12(b)(6). Each party is **ORDERED** to bear its own taxable costs and expenses incurred herein to date. If Plaintiffs, conscious of their responsibilities under Fed.R.Civ.P. 11, believe their Complaint can be amended so as to overcome the deficiencies the Court has identified, they may seek leave to amend, and may file a Motion to Vacate this Order within ten (10) days of the date of this Order. However, Plaintiffs are expressly cautioned that a conclusory reiteration of the allegations in the Original Complaint will be an exercise in futility. Leave to amend will only be granted if Plaintiffs satisfactorily allege cognizable damages in accordance with the legal standards identified in this Order.

**IT IS SO ORDERED.**